IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DON CHRISTENSEN,<br><br>**Plaintiff**,<br><br>v.<br><br>TRIUMPH AEROSTRUCTURES-<br>TULSA, LLC,<br><br>**Defendant.** | Case No. 18-CV-511-JFH-JFJ |

**OPINION AND ORDER**

This matter comes before the Court on the Motion for Summary Judgment [Dkt. No. 66], filed by Defendant Triumph Aerostructures-Tulsa, LLC ("Triumph"). The case arose from the termination of Plaintiff Don Christensen's ("Plaintiff") employment with Triumph. Dkt. No. 2-1. Triumph employed Plaintiff as an industrial engineer ("IE") from 2014 to 2016, until he was terminated pursuant to a reduction in force on October 31, 2016. He filed this suit against Triumph in Tulsa County District Court on September 5, 2018. Dkt. No. 2-1. The case was removed to this Court on October 3, 2018. Dkt. No. 2. Triumph filed its motion for summary judgment on September 29, 2020. Dkt. No. 66. For the reasons set forth below, the Court grants in part and denies in part the Motion.

**STANDARD**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a

verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries this initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671. If the nonmovant demonstrates a genuine dispute as to material facts, the Court views the facts in the light most favorable to him. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, a failure of proof "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## UNDISPUTED MATERIAL FACTS[1]

### Background of Plaintiff's Employment

From 2014 to 2016, Plaintiff worked as an IE for aerospace manufacturing company Triumph, working on Triumph's G280 and G650 projects. Dkt. No. 66 at ¶¶ 1-3, 7, 14; Dkt. No.

---

[1] As an initial matter, the Court notes that both parties' briefing contains chronological errors when compared against their exhibits. For instance, Triumph describes a document as Plaintiff's August 2016 performance review, but the cited exhibit shows a completion date of August 2015. Dkt. No. 66 at ¶ 36; Dkt. No. 66-12. Likewise, Plaintiff claims that he completed a voluntary self-identification form after making multiple requests for accommodation in 2016 [Dkt. No. 69 at ¶10; Dkt. No. 66-14], but the form referenced shows a completion date of September 29, 2015 [Dkt. No. 66-10]. Additionally, both parties failed to include cited pages within the exhibits they filed. *See infra* nn.5 & 7. Counsel are advised to be careful in making statements to the Court in their briefing which are not supported by the evidentiary material they submit to the Court.

69 at ¶¶ 1-3, 7, 14.  Triumph's level designations reflected IEs' experience:  the higher the number, the more experience and responsibility an engineer had.  Dkt. No. 66 at ¶¶ 7-8; Dkt. No. 69 at ¶¶ 7-8.  Plaintiff's Level 4 designation was the highest recognized.  *Id.*

Sivakumar Balasubramanian ("Balasubramanian") and Scott Herzog ("Herzog") were supervisors in the IE department.  Dkt. No. 66 at ¶ 1; Dkt. No. 69 at ¶ 1.  Balasubramanian was a director whose job responsibilities included conducting performance reviews.  Dkt. No. 66 at ¶ 11; Dkt. No. 69 at ¶ 11.  Herzog was a lead whose job responsibilities included giving "support to the IEs when they had technical questions or needed assistance" but did not include "administer[ing] corrective action or terminat[ing] employment."  Dkt. No. 66 at ¶ 15; Dkt. No. 69 at ¶ 15.

Plaintiff received an annual performance review from Triumph on August 10, 2015.  Dkt. No. 66 at ¶ 12; Dkt. No. 69 at ¶ 12.  The review included an "in development or needs development" assessment in three areas and a "solid performer" assessment in eight areas.  *Id.*; Dkt. No. 66-12.  Although some of Plaintiff's coworkers received overall ratings on their 2015 reviews, Plaintiff did not.  Dkt. No. 69 at ¶ 62; Dkt. No. 71 at ¶ 62; Dkt. No. 66-12.  Plaintiff considered his 2015 review to be a positive review.  Dkt. No. 66 at ¶ 13; Dkt. No. 69 at ¶ 13; Dkt. No. 66-2 at 104:19-105:8.  On September 12, 2015, Plaintiff submitted a voluntary self-identification form disclosing to Triumph that he had an unspecified disability.  Dkt. No. 66 at ¶ 10; Dkt No. 69 at ¶ 10; Dkt No. 66-10.

**Plaintiff's Change in Job Assignment and Location**

During his 2015 work on the G280 project, Plaintiff officed on the upper level of Triumph's Building 1 and used an elevator to move between the two floors of the building.  Dkt. No. 66 at ¶ 7; Dkt. No. 69 at ¶ 7.  Plaintiff did not request any accommodations while working in Building 1.  *Id.*  Plaintiff transferred from the G280 project to the G650 project on January 1, 2016.  Dkt. No.

3

66 at ¶ 14; Dkt. No. 69 at ¶ 14. Balasubramanian and Herzog both supervised Plaintiff on the G650 project. *Id.* When his work assignment changed, Plaintiff's workspace changed to the shop floor of Building 4 and the ground floor of Building 123. *Id.* The shop floor of Building 4 had two areas: one with machinery and assembly tools and one with desks for IEs. Dkt. No. 66 at ¶ 21; Dkt. No. 69 at ¶ 21. Building 123 did not have an elevator. Dkt. No. 66-14.

After his transfer to the G650 project, Balasubramanian, Herzog, and HR employee Sheila Edmonds ("Edmonds") received reports that Plaintiff had fallen asleep at both his shop floor desk and his office desk. Dkt. No. 66 at ¶¶ 18-19; Dkt. No. 66-1 at 68:7-23; Dkt. No. 66-3 at 29:13-15; Dkt. No. 66-13.[2] In May 2016, Plaintiff exchanged emails with Edmonds regarding this drowsiness (and provided a list to Triumph of his medications that could cause his drowsiness). Dkt. No. 66 at ¶ 19; Dkt. No. 69 at ¶ 19; Dkt. No. 66-13. Plaintiff did not deny sleeping and wrote, "I'll be OK. I'll just get up and move around if I get drowsy again." *Id.*

**Plaintiff's Requests for Accommodation**

In May 2016, Herzog and Balasubramanian moved Plaintiff's desk from the lower level of Building 123 to the upper level. Dkt. No. 66 at ¶ 23; Dkt. No. 69 at ¶ 23.[3] On June 2, 2016,

---

[2] Plaintiff denies ¶ 18 of Triumph's Motion and claims he was never reprimanded or disciplined for "falling asleep." Dkt. No. 69 at ¶ 18.

[3] The reason for the desk move is disputed. Triumph claims that Plaintiff's desk relocation was "in response to safety concerns" so that "Herzog [could] help keep Plaintiff awake while he was working at his desk if he should become drowsy." Dkt. No. 66 at ¶ 23. Plaintiff disputes this, claiming "the emails discussing the matter do not mention Mr. Christensen's difficulty staying awake or any safety issues at all for that matter." Dkt. No. 69 at ¶ 23; Dkt. No. 66-14. Plaintiff calls attention to Herzog's statement that he "prefer[red] to have [Plaintiff] upstairs so that [they could] confer on issues" and Balasubramanian's reply that asked if Plaintiff had "thought about staying permanently in the shop floor so [he didn't] have to move buildings," arguing that "Mr. Herzog had no reason to be cryptic about why he wanted to move Mr. Christensen" and that "[n]othing in Mr. Balasubramanian's response . . . signals a desire to have him upstairs next to Mr. Herzog to keep him awake or a concern over safety on the shop floor." *Id.* Triumph concedes "[t]hat the safety reasoning was not stated in the email to Plaintiff" but argues that this omission "does not refute the purpose of the move." Dkt. No. 71 at ¶ 23.

4

Plaintiff emailed Balasubramanian and Herzog with a request to return to working primarily from the ground floor of Building 123, as well as from the south end of the shop in Building 4, because the frequent stair climbing required to reach his upper-floor desk in Building 123 aggravated a bone spur and the Achilles tendon in his right leg. Dkt. No. 66 at ¶¶ 24, 26; Dkt. No. 69 at ¶¶ 24, 26; Dkt. No. 66-14. Herzog had some level of awareness before the move that Plaintiff had difficulty with stairs, although the parties dispute the details: Plaintiff testified that he told Herzog an upstairs move "could be a problem with [his] mobility because of [his] back and [] foot pain" [Dkt. No. 69-1 at 48:8-14], while Herzog testified more generally that he had "witnessed [Plaintiff], going up the stairs very slowly, was concerned about him, [and] asked about it" [Dkt. No. 71-2 at 45:20-21]. Dkt. No. 69 at ¶ 67; Dkt. No. 71 at ¶ 67.

Balasubramanian responded to Plaintiff's request for relocation with a suggestion that Plaintiff office exclusively on the Building 4 shop floor. Dkt. No. 66 at ¶¶ 24, 26; Dkt. No. 69 at ¶¶ 24, 26; Dkt. No. 66-14. Plaintiff replied that he intended to use a shop floor desk when projects required him to be "on location," but said his productivity would improve if he had a "'quiet' desk without the shop noise and distractions." *Id.* Plaintiff referenced a recent performance review and said he "definitely need[ed] to spend more time on cost saving and process improvement projects." *Id.* The next day, June 3, 2016, Herzog replied and said Triumph was "working a deal" to move another worker so Plaintiff could have a ground floor desk, which "would minimize the need to go back and forth more than a couple of times a day." *Id.* However, Herzog wrote that he "prefer[red] to have [Plaintiff] upstairs with the rest of the group so that [they could] confer on issues." *Id.* Also on June 3, 2016, Plaintiff received his 2016 performance review with an "overall form rating" of "in development or needs development." Dkt. No. 66 at ¶ 27; Dkt. No. 69 at ¶ 27; Dkt. No. 66-15 at 9.

On July 7, 2016—slightly more than a month after his original request for desk relocation—Plaintiff emailed Balasubramanian and Herzog and copied HR generalist Shannon Mayberry ("Mayberry") inquiring about the desk move, which had not yet occurred. Dkt. No. 66 at ¶ 29; Dkt. No. 69 at ¶ 29; Dkt. No. 66-14. The following exchange ensued:

> Mayberry: This is the first I'm hearing about a disability and a need for an accommodation . . . . I don't see that we have anything on file for you [] regarding this disability.
>
> Plaintiff: I recently sent you a copy of my Oklahoma disabled parking placard and I also indicated on a paper I submitted when we came over to Triumph from Spirit that I had a disability. I also have a Triumph disabled person parking badge that you all issued as well.
>
> Mayberry: Having a handicap sign does not mean that you have a disability that needs an accommodation beyond parking close to the building. When an accommodation is requested for work, there is paper work [sic] that has to be completed and a process that has to happen.
>
> Plaintiff: I didn't know all of that. . . .

Dkt. No. 66-14 at 3-4. Plaintiff's desk was moved by August 2, 2016, and he received handicap parking sometime thereafter. Dkt. No. 66 at ¶ 33; Dkt. No. 69 at ¶ 33; Dkt. No. 66-12.

On August 8, 2016, Triumph hired a 23-year-old Level 1 IE named Caleb Jette to work on the G650 project. Dkt. No. 66 at ¶¶ 36-37; Dkt. No. 69 at ¶¶ 36-37. Jette had previous internship experience, was recommended by several IEs, and was hired to take over Herzog's responsibilities on the shop floor. *Id.* He was assigned to a different manufacturing area from Plaintiff within the same G650 project. Dkt. No. 66 at ¶ 38; Dkt. No. 69 at ¶ 38.[4]

---

[4] Plaintiff disputes the phrasing of ¶ 38 but concedes that Plaintiff and Jette were assigned to different areas of the production line. Dkt. No. 69 at ¶ 38.

6

**Triumph's Reduction in Force**

In October 2016, Triumph performed a reduction in force ("RIF") to reduce expenses. Dkt. No. 66 at ¶ 41; Dkt. No. 69 at ¶ 41; Dkt. No. 66-3 at 73:17-25.[5] The RIF occurred in two stages. First, management members held a staffing meeting where they ranked and evaluated employees' strengths and weaknesses. Dkt. No. 66 at ¶ 44; Dkt. No. 66-1 at 19:3-15; Dkt. No. 66-3 at 18:14-19:6, 22:1-9, 24:4-10; Dkt. No. 66-11 at 25:24-26:7. Performance reviews were not considered at this meeting. Dkt. No. 66-1 at 99:22-100:20; Dkt. No. 66-3 at 23:17-18, 25:13-16. Second, Triumph management completed a "RIF Assessment" worksheet sometime after this meeting.[6] Dkt. No. 66 at ¶¶ 46-49; Dkt. No. 69 at ¶¶ 46-49; Dkt. No. 66-19. Plaintiff received an overall score of 2.25 on the RIF Assessment—3 for work experience, 2 for quality of work, 2 for skills and ability to perform future work, 2 for productivity—with a note that he received "needs improvement" evaluations in two previous performance reviews. Dkt. No. 66 at ¶ 50; Dkt. No. 69 at ¶ 50; Dkt. No. 66-19. The other four IEs in Plaintiff's department received overall scores between 3 and 3.5. Dkt. No. 66 at ¶¶ 51-54; Dkt. No. 69 at ¶¶ 51-54; Dkt. No. 66-19. Plaintiff and five other employees were terminated pursuant to the RIF: two under the age of 40 and four above the age of 50. Dkt. No. 66 at ¶ 56; Dkt. No. 69 at ¶ 56; Dkt. No. 66-22. Plaintiff's termination became effective October 31, 2016. Dkt. No. 66 at ¶ 57; Dkt. No. 69 at ¶ 57; Dkt. No. 66-23.

Plaintiff disputes both the rationale for and the implementation of the RIF. Dkt. No. 69 at ¶¶ 41, 42, 44, 48. Instead of putting forth evidence to support his argument, however, Plaintiff cites deposition excerpts from Balasubramanian, Herzog, and Noel Martin ("Martin") that documentation generally would exist with directions for implementing a RIF but that each

---

[5] Triumph also cites Dkt. No. 66-11 at 73:13-74:5, but Dkt. No. 66-11 omits pages 73-74.

[6] The provenance of the RIF Assessment is disputed. *See infra* at 10.

deponent was not aware of documentation regarding the need for the RIF or how it was to be carried out. Dkt. No. 69 at ¶ 41; Dkt. No. 69-2 at 22:17-23:13; Dkt. No. 69-3 at 85:17-21; Dkt. No. 69-4 at 74:17-75:22. Triumph concedes this lack of documentation. Dkt. No. 71 at ¶¶ 41-48, 57; *see also id.* at ¶ 42 ("Plaintiff cannot refute [the reason for the RIF] by referencing documentation that does not exist . . . .").

Plaintiff's arguments about a lack of documentation fail to create a fact issue about Triumph's asserted reason for the RIF. His grievance is a discovery issue, not a summary judgment issue, and Plaintiff did not file any motions to compel. This does not carry Plaintiff's burden to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for [him]." *Adler*, 144 F.3d at 671. However, Plaintiff does establish—and Triumph concedes—an undisputed fact that common documentation is lacking regarding the rationale and implementation of the RIF.

Martin testified that he "would have received some directive [] from above" with "instructions about reviewing policies and procedures and those kind of things . . . instructions in terms of here is the methods [sic] for selection and here is how you document it and here is a timetable" when implementing a RIF. Dkt. No. 69-2 at 22:17-23:13. In his words, "there was always some instruction" in "all of the reductions that [he] participated in or helped with [at] Triumph." *Id.* Balasubramanian testified "normally" his team would "go through the process that they define to us . . . with either a spreadsheet or something that HR provides" but could not recall whether documentation was given to him for the 2016 RIF. Dkt. No. 69-3 at 85:17-21. Although Balasubramanian agreed with opposing counsel that "HR usually provides upper level management with written instructions on how the reduction in force [is to] be calculated by senior level management," he could not recall or cite any such documentation for the 2016 RIF. *Id.* at

8

86:11-25.  Herzog testified that guidelines for implementing the RIF were "probably []  someplace," but were "not in [his] level."  Dkt. No. 69-4 at 74:17-75:4.  He was "sure [the RIF] was all documented," but was not "privy to that information."  *Id.* at 75:9-22.

## DISPUTED MATERIAL FACTS

**The Sufficiency of Triumph's Responses to Plaintiff's Requests for Accommodation**

Triumph claims it fully accommodated Plaintiff by providing him with a ground floor desk.  Dkt. No. 66 at ¶ 30.  Plaintiff agrees that he eventually received a ground floor desk but adduces evidence that his desk relocation request for accommodation "was not taken seriously by his supervisors."  Dkt. No. 69 at ¶ 30.  Herzog testified that he characterized Plaintiff "as a person that complained about a lot of things."  Dkt. No. 69-1 at 45:16-22.  Balasubramanian testified that he did not reply to Plaintiff's request for accommodation and, when asked for details on Plaintiff's request for accommodation, testified that he did not remember the details of how it was addressed or resolved.  Dkt. No. 69-3 at 54:19-22, 56:1-4.[7]  Triumph's human resources department did not learn of Plaintiff's request until a month after Plaintiff contacted Balasubramanian and Herzog.  Dkt. No. 66-14 at 4.  Although Triumph had a specific procedure for addressing requests for accommodation, apparently neither Balasubramanian nor Herzog initiated this process or informed Plaintiff of its existence.  *Id.* at 3.  A rational fact finder could find for either party regarding the sufficiency of Triumph's response to Plaintiff's request for desk accommodation.

Triumph also claims that Plaintiff's request for a handicap parking space was eventually "resolved to Plaintiff's satisfaction."  Dkt. No. 66 at ¶ 34.  This is supported by Plaintiff's testimony.  Dkt. No. 66-2 at 64:2-4.  However, Plaintiff cites other testimony from Plaintiff that: Plaintiff "waited weeks and [Triumph] said 'We're working on it' when [he] asked them again;"

---

[7] Plaintiff cites Balasubramanian's deposition at 54:19-56:4, but Dkt. No. 69-3 omits page 55.

9

"it was probably a month from [Plaintiff's] initial request that they got a contractor to come in and paint the lines for the handicap parking place;" and Plaintiff "was cognizant to follow up on [the handicap parking place] request when nothing was happening and try to get them to act on it." Dkt. No. 69-1 at 63:3-11, 119:24-120:1. Here, too, a rational fact finder could find for either party.

**The Provenance of the RIF Assessment**

In its Motion, Triumph claims that Balasubramanian completed the RIF Assessment for his department. Dkt. No. 66 at ¶ 46 (citing Dkt. No. 66-19). In his Response, Plaintiff cites Balasubramanian's deposition that he did not generate the document and did not remember whether he completed the RIF Assessment. Dkt. No. 69 at ¶ 46; Dkt. No. 69-3 at 142:8-143:15. In its Reply, Triumph admits that Balasubramanian does not recall generating the document. Dkt. No. 71 at ¶ 46. The RIF Assessment does not show an author's name. Dkt. No. 66-19. Although the parties dispute the provenance of the RIF Assessment, they appear to agree that the scores were determinative of termination decisions. Dkt. No. 66 at ¶¶ 49-56; Dkt. No. 69 at ¶¶ 49-56.

## AUTHORITY AND ANALYSIS

### I. ADA Discrimination

A plaintiff may prevail on a claim under the Americans with Disabilities Act ("ADA") by providing either direct or indirect evidence of discrimination. *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 920 (10th Cir. 2012). Direct evidence of discrimination "is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007). Stated differently, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007). In this case, Plaintiff has not presented any direct evidence of disability discrimination.

Absent direct evidence of discrimination, the Court will apply the burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973); *see, e.g.*, *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). Under this framework, a plaintiff has the initial burden on summary judgment of demonstrating a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To meet this burden, the plaintiff must show that he: (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination because of his disability. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019) (internal quotation marks omitted); *see E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011).

After the plaintiff has made the requisite showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802-03. If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely "pretextual." *Id.* at 804-05. "[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (alteration in original); *see also Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) ("A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." (internal quotation marks and citation omitted)).

Here, the parties do not dispute that Plaintiff is disabled as defined by the ADA or that he was qualified as a Level 4 IE while employed at Triumph. Dkt. No. 66 at 18; Dkt. No. 69 at 18.

The only disputed issue is whether Plaintiff suffered discrimination due to his disability. *See Tesone*, 942 F.3d at 995. Plaintiff alleges that he suffered discrimination through a bad faith delay by Triumph in reasonably accommodating his disability. Dkt. No. 2-2 at 5-6.

"[T]he ADA imposes on the employer an *affirmative obligation* to make a reasonable accommodation . . . ." *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 795 (10th Cir. 2020) (en banc) (emphasis in original); 42 U.S.C. § 12112(5)(A). "The term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1205 (10th Cir. 2018). "Acquisition or modification of equipment or devices" is included in the ADA's statutory nonexclusive list of reasonable accommodations. 42 U.S.C. § 12111(9).

Courts in the Tenth Circuit use a modified *McDonnell Douglas* burden-shifting framework to evaluate failure to accommodate claims. *Lincoln*, 900 F.3d at 1204. A plaintiff must establish his prima facie case by demonstrating: (1) he is disabled; (2) he is otherwise qualified for his job; and (3) he requested a plausibly reasonable accommodation. *Id.* Because the essence of a failure to accommodate claim is an employer's failure to perform an affirmative obligation, a plaintiff does *not* have to prove he suffered an adverse employment action to succeed on a failure to accommodate claim. *Exby-Stolley*, 979 F.3d at 792-95. The parties do not contest any of the prima facie elements of this failure to accommodate claim.

If a plaintiff establishes his prima facie case, "the burden shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Lincoln*, 900 F.3d at 1204 (quotation omitted). To assess whether an employer's delay in providing reasonable accommodation violated the ADA, courts

consider the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262-63 (10th Cir. 2001).

The *Selenke* court affirmed summary judgment where an employer took multiple steps across the course of several months to accommodate an employee with a sinus-related disability. *Id.* The employer put on evidence that it promptly contacted a contractor to evaluate ventilation; retained an "industrial hygienist" to evaluate air quality; and followed expert recommendations to install another vent in the plaintiff's workspace. The employer additionally provided the plaintiff with a respirator mask to wear during the time it was seeking this expert guidance, and it did not refuse any of the leave time the plaintiff requested. *Id.* at 1263.

Similarly, in two cases cited by Triumph, employers took interim steps to help address the issues complained of by plaintiffs. In *Smallwood v. Oklahoma Department of Human Services*, the employer twice ordered a device it believed would help the plaintiff, experienced a delay in shipping, canceled the original order, and placed a new order with expedited delivery from a different vendor. No. CIV-04-671-T, 2005 WL 8157753, at *4-5 (W.D. Okla. Sept. 1, 2005). In *Ruiz v. Woodward, Inc.*, the delay was partially attributable to a decisionmaker himself being on leave but the employer temporarily provided the plaintiff with the entire accommodation he requested while it considered permanent resolution. No. 17-CV-3046-MSJ-KLM, 2019 WL 6893039, at *11 (D. Colo. Dec. 18, 2019).

Triumph has not adduced sufficient evidence to conclusively rebut or establish an affirmative defense to Plaintiff's failure to accommodate claim. Although Triumph introduces evidence that Herzog started to "work[] a deal" to move another worker shortly after Plaintiff requested a ground floor desk [Dkt. No. 66-14], it does not explain why the process took more

13

than a month. Nor does Triumph indicate any interim accommodations, such as a modified work schedule to minimize Plaintiff's stairclimbing. The combination of Herzog's testimony that he believed Plaintiff complained frequently, Herzog's knowledge of Plaintiff's mobility issues before he moved Plaintiff's desk upstairs, Balasubramanian's testimony that he was not involved in the accommodation process, and Edmonds' email that she had not been informed of the accommodation Plaintiff sought a month after he lodged his request further precludes the Court from being able to conclude as a matter of law that Triumph acted in good faith. Because a reasonable jury could return a verdict for Plaintiff under the facts presented and the governing substantive law, summary judgment is not proper on Plaintiff's ADA discrimination claim.

## II.   ADA Retaliation

An ADA retaliation claim requires a plaintiff to prove: (1) he was engaged in an activity protected by the ADA; (2) he suffered an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186-87 (10th Cir. 2016) (citing *Anderson v. Coors Brewing*, 181 F.3d 1171, 1178 (10th Cir. 1999)). As with a failure to accommodate claim, if a plaintiff does not offer direct evidence of retaliation but does establish a prima facie retaliation claim, *McDonnell Douglas* burden shifting applies—first to the defendant to articulate a nondiscriminatory reason for the adverse employment action and then to the plaintiff to prove the articulated reason is pretextual. *Id.*

In an ADA retaliation claim, "the burden of establishing that the circumstances justify an inference of retaliatory motive is similar to establishing 'but for' causation.'" *Shurtz v. Newkirk Pub. Sch., Indep. Sch. Dist. No. 125*, No. CIV-18-178-R, 2019 WL 6135053, at *4 (W.D. Okla. Nov. 19, 2019) (citing *Lincoln*, 900 F.3d at 1209). However, the Tenth Circuit has declined to

formally adopt a "but for" standard in the ADA retaliation context. *Dennis v. Fitzsimons*, 850 F. App'x 598, 601 n.4 (10th Cir. 2021) ("[O]ther circuits [have] determined that courts must evaluate ADA claims under a 'but for' standard. But we have not yet made such a determination.").

Triumph does not contest the first two elements of Plaintiff's retaliation claim. Instead, it argues there were no causal connections between Plaintiff's requests for accommodation, 2016 performance review, and termination. Dkt. No. 66 at 22-24.

"[A]n ADA retaliation plaintiff may rely solely on temporal proximity to show causation during the prima facie stage of the *McDonnell Douglas* framework where his protected activity is closely followed by an adverse employment action." *Foster*, 830 F.3d at 1191. However, temporal proximity does not include gaps of three or four months. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007). Plaintiff argues that temporal proximity exists between his requests for accommodation on June 2, 2016 and his "needs improvement" performance evaluation on June 3, 2016. Dkt. No. 69 at 25-26. The Court disagrees. Assuming without deciding that Plaintiff's 2016 performance review could constitute an adverse employment action, the evaluation indicates that it was discussed with Plaintiff on April 18, 2016, six weeks before Plaintiff requested accommodation. Dkt. No. 66-15 at 10. Plaintiff's emails confirm this: on June 2, 2016, Plaintiff wrote "as we discussed in my annual review, I definitely need to spend more time on cost saving and process improvement projects this year." Dkt. No. 66-14 at 5. Similarly unavailing is Plaintiff's claim of temporal proximity between his requests for accommodation and his termination. Plaintiff's requests for accommodation occurred in June 2016 and his termination occurred in October 2016. This four-month gap is insufficient on its own to establish a causal connection between Plaintiff's protected activity and adverse employment action.

"[T]he passage of time does not necessarily bar a plaintiff's retaliation claim if *additional* evidence establishes the retaliatory motive." *Piercy v. Maketa*, 480 F.3d 1192, 1198-99 (10th Cir. 2007) (emphasis in original). Additional evidence may include evidence of pretext, even though evidence of pretext "is typically considered during the third phase of the *McDonnell Douglas* inquiry." *Proctor*, 502 F.3d at 1209. Pretext "requires a showing that the proffered nondiscriminatory reason is unworthy of belief." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012) (citations and quotations omitted). Plaintiff must set forth "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Proctor*, 502 F.3d at 1209 (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006)).

Plaintiff has just barely met this burden. Triumph's proffered legitimate reason for its RIF, based on deposition testimony, was cost-cutting. Yet Triumph concedes that documentation reflecting the rationale and implementation of the RIF—which would usually be generated by Triumph as a standard part of enacting a RIF—does not exist in this case and no explanation has been given for its absence. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A rational factfinder could consider Triumph's absence of standard documentation indicative of pretext.

Triumph's proffered legitimate reason for terminating Plaintiff was that he scored the lowest of his colleagues on the RIF Assessment. The lack of documentation for implementing the RIF leaves open the questions of how the RIF Assessment was to be completed and how much weight the Assessment was to be given. Additionally, it is uncontroverted that Balasubramanian, the employee who Triumph claims completed the Assessment, does not recall whether he completed the Assessment or whether it was even used in the RIF.[8] Again, the Court cannot conclude that no rational factfinder would find this to be indicative of pretext. The ambiguous significance and provenance of the RIF Assessment are weaknesses or inconsistencies not appropriate for the Court to resolve and are sufficient for a reasonable factfinder to find Triumph's proffered rationale pretextual. Summary judgment on Plaintiff's ADA retaliation claim is not warranted.

### III. The ADEA

The Age Discrimination in Employment Act ("ADEA") prohibits employers from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a). An ADEA plaintiff affected by a RIF must prove: (1) he is over 40 years old; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) there is some evidence the employer intended to discriminate against him in reaching its RIF decision. 29 U.S.C. § 631(a); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). As with ADA discrimination and retaliation claims, *McDonnell Douglas* burden-shifting applies. *Beaird*, 145 F.3d at 1165. However, unlike ADA claims, an ADEA claim requires a plaintiff to prove but-for

---

[8] The jury might find it significant that past performance reviews were not considered as part of the RIF meeting (Dkt. No. 66-1 at 99:22-100:20; Dkt. No. 66-3 at 23:17-18, 25:13-16); rather, Triumph management apparently completed a separate "RIF Assessment" worksheet sometime thereafter (Dkt. No. 66 at ¶¶ 46-49; Dkt. No. 69 at ¶¶ 46-49; Dkt. No. 66-19).

17

causation. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009); *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010); *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir. 1985). While a plaintiff does not have to show that age was the sole factor in his termination, he must show that "age was the factor that made a difference." *Jones*, 617 F.3d at 1277 (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010)).

Plaintiff has not set forth evidence establishing the second and third prongs of his prima facie case. In April 2016, Plaintiff discussed a performance evaluation with Triumph which indicated multiple areas where Plaintiff's performance needed improvement. In June 2016, Plaintiff confirmed that he had discussed and received the evaluation when he said that he needed a quiet working space because he "definitely need[ed] to spend more time on cost saving and process improvement projects." While Plaintiff challenges the objectivity of his 2016 performance evaluation, he does not put on any evidence indicating that the objectivity was skewed because of his age as opposed to his disability or his supervisor's general belief that he "complained a lot." The evidence before the Court "can only be speculatively attributed to discriminatory animus, and speculation will not suffice for evidence." *Beaird*, 145 F.3d at 1170 (quotation omitted).

Plaintiff has not put on any evidence to establish that his age was "the factor that made a difference" in his termination. A failure of proof "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. Summary judgment is proper on Plaintiff's ADEA claim.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Triumph Aerostructures-Tulsa, LLC's Motion for Summary Judgment [Dkt. No. 66] is GRANTED IN PART AND DENIED IN PART. It is granted as to Plaintiff's ADEA claim and denied as to his ADA discrimination and retaliation claims.

Dated this 21st day of June 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE